MORGAN, LEWIS & BOCKIUS LLP
Brian D. Berry, Bar No. 229893
Andrea Fellion, Bar No. 262278
Kassia Stephenson, Bar No. 336175
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:   +1.415.442.1000
Fax:  +1.415.442.1001
brian.berry@morganlewis.com
andrea.fellion@morganlewis.com
kassia.stephenson@morganlewis.com

Attorneys for Defendant
TESLA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCIO JUAREZ RUIZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TESLA, INC., a Delaware corporation dba TESLA MOTORS, INC.; ATLANTIC SOLUTIONS GROUP INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:22-cv-00693<br><br>**DEFENDANT TESLA, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>Action Filed:  November 22, 2021<br><br>[28 U.S.C. §§ 1332, 1441, 1446, and 1453] |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

**TO THE CLERK OF THE CENTRAL DISTRICT OF CALIFORNIA AND PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant TESLA, INC. dba TESLA MOTORS, INC. ("Defendant" or "Tesla"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, County of San Bernardino, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. This removal is based on the following grounds:

## I. PROCEDURAL BACKGROUND.

1. On November 22, 2021, Plaintiff Rocio Juarez Ruiz ("Plaintiff") filed an unverified putative class action complaint ("Complaint") in the Superior Court of the State of California, County of San Bernardino, entitled *Rocio Juarez Ruiz, individually, and on behalf of others similarly situated v. Tesla, Inc., a Delaware corporation dba Tesla Motors, Inc.; Atlantic Solutions Group Inc., a Delaware corporation; and DOES 1 through 10, inclusive*, Case No. CIVSB2132323 (the "Complaint").

2. On January 21, 2022, Plaintiff filed his First Amended Complaint ("FAC") which alleges the same class claims and adds a ninth cause of action alleging civil penalties pursuant to the Private Attorneys Generals Act ("PAGA").

3. On March 23, 2022, Plaintiff served copies of the Summons, FAC, and Civil Cover Sheet on the registered agent for Tesla. True and correct copies of these documents are attached hereto as **Exhibit A**. Exhibit A constitutes all the pleadings, process, and orders served upon or filed by Tesla in the Superior Court action.

4. The FAC seeks class damages for: (1) failure to pay minimum wages; (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages; (7) failure to provide accurate itemized wage statements; and (8) unfair business practices. (Ex. A, FAC ¶¶ 32-42, 42-50, 51-54, 55-58, 59-62, 63-69, 70-77, 79-96).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

2

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

5. Plaintiff alleges his First through Eighth Causes of Action individually and on behalf of a class of current and former employees. Plaintiff alleges that the Class "consists of Plaintiff and all other persons who have been employed by any Defendants [sic] in California as an hourly-paid, non-exempt employee during the statute of limitations period applicable to the claims pleaded here." (Ex. A, FAC ¶¶ 97-105). Plaintiff alleges his Ninth Cause of Action on behalf of "past and present non-exempt, hourly-paid employees of Defendants who worked in California during the applicable statute of limitations period." (Ex. A, FAC ¶¶ 2, 3).

## II.     REMOVAL IS TIMELY.

6. Because Tesla is filing this Notice of Removal within thirty days of service of the FAC, it is timely under 28 U.S.C. §§ 1446(b)(3) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.    THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION OVER THE COMPLAINT UNDER CAFA.

7. The FAC is a putative class action.[1] (Ex. A, Compl., ¶ 2, Prayer for Relief ¶ 1). Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Tesla, (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the FAC places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453.[2]

---

[1] Tesla denies, and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action. Tesla further denies Plaintiff's claims and denies that he can recover any damages.

[2] Tesla denies Plaintiff's factual allegations and denies that Plaintiff and members of the putative class are entitled to any relief whatsoever.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

3

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

### A. Diversity of Citizenship Exists.

8. To satisfy CAFA's diversity requirement, a removing party seeking removal must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

9. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). Citizenship is determined by the individual's domicile at the time that the operative complaint is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *Broadway Grill, Inc. v. Visa, Inc.*, 856 F.3d 1274, 1279 (9th Cir. 2017). Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

10. In his FAC, Plaintiff states that he "is a California resident" (Ex. A, FAC ¶ 8). The FAC does not allege that Plaintiff is a citizen of any other state. Therefore, Plaintiff is a citizen of California for purposes of diversity jurisdiction.

11. For CAFA diversity purposes, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

4

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

1  control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings . . . ." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

12. Tesla is organized under the laws of Delaware. Declaration of Nicole White in Support of Tesla, Inc.'s Notice of Removal ("White Decl.") ¶ 6. When Plaintiff filed the FAC, and now, Tesla's corporate headquarters are in the State of Texas, and its executive and core administrative functions (including but not limited to human resources, operations, corporate finance, accounting, payroll, legal, and information systems) have been located in Texas. In addition, Tesla's Chief Executive Officer, Chief Financial Officer, as well as other corporate executives work from the Texas headquarters, and direct, control, and coordinate Tesla's corporate activities from its Texas headquarters. *Id*. Accordingly, Tesla is a citizen of Texas for diversity jurisdiction purposes. 28 U.S.C. § 1332(d)(10).

13. Therefore, diversity of citizenship exists under CAFA because at least one member of the putative class is a citizen of a state different than Tesla. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

**B.  Defendant Atlantic Solutions Consents to Removal.**

14. The only Defendants named in the FAC are Tesla and Atlantic Solutions Group, Inc. ("Atlantic"). Counsel for Tesla has notified Atlantic of this removal and has received its consent to remove this action. Accordingly, all Defendants in this action have agreed to join the instant removal.

**C.  The Putative Class Has More Than 100 Members.**

15. The FAC alleges its claims on behalf of a "class consist[ing] of Plaintiff and all other persons who have been employed by ***any*** Defendants [sic] in California as an hourly-paid, non-exempt employee." (Ex. A, FAC ¶ 2) (emphasis added). Tesla has had a constant headcount of at least 10,000 non-exempt, full-time

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

5

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

employees in California during the year preceding the FAC's filing. White Decl. ¶ 3. Thus, the putative class contains more than 100 members.

### D. The Amount In Controversy Exceeds $5,000,000.[3]

16. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Where, as here, the Plaintiff does not plead a specific amount of damages, the petition for removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," consistent with the pleading standard under Rule 8(a). *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); Fed. R. Civ. P. 8(a). "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citation omitted).

17. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted). *See also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove

---

[3] This Notice of Removal addresses the nature and amount of damages that the FAC places in controversy. Tesla refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Tesla maintains that each of Plaintiff's claims lack merit, and that Tesla is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the FAC or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Tesla's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, Tesla denies that this case is suitable for class treatment.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

6

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy."). The ultimate inquiry is what amount a complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy").

18. Under *Dart Cherokee*, a removing defendant is not required to submit evidence supporting its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotations omitted). The removal allegations "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias v. Residence Inn by Marriott*, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019)). Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Id.* at *3.

19. Here, the amount in controversy exceeds $5 million based on Plaintiff's allegations. Indeed, Plaintiff's Sixth, Seventh, and Fifth Causes of Action, as well as Plaintiff's attorneys' fee claim, alone place more than $5,000,000 in controversy, as summarized in the following table[4]:

---

[4] Notably, Plaintiff alleges that Tesla "regularly" failed to provide putative class members with meal breaks (FAC ¶53) and created work conditions that made it "impossible" or "impractical" for putative class members to take rest breaks (FAC ¶ 57). Although these sweeping allegations warrant an assumption of very high violation rates, each of these claims, standing alone, easily clears the $5 million

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

7

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

| Claim | Calculation | Amount in Controversy |
|---|---|---|
| Late Final Wages | $12.5 x 8 x 30 x 1,700 | $5,100,000 |
| Wage Statement Violations | (10,000 x $50) + (10,000 x $100 x 5) | $5,500,000 |
| Failure to Reimburse | $20 x 12 x 10,000 | $2,400,000 |
| Attorneys' Fees | 13,000,000 x .25 | $3,250,000 |
| Total |  | **$16,250,000** |

**1. Plaintiff's Sixth Cause of Action for Failure to Pay Wages of Discharged Employees Puts at Least $5,100,000 in Controversy.**

20. Plaintiff alleges that Tesla "failed, and continue[s] to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code Sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." (Ex. A, FAC ¶ 65). Plaintiff further alleges that, as a result, "Plaintiff and the Class are entitled to recover from Defendant their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203." (Ex. A, FAC ¶ 68).

21. Labor Code § 203 provides that an employer who willfully fails to timely pay wages to an employee who is discharged or quits, must pay, as a penalty, the "the wages of the employee . . . from the due date thereof . . . until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

22. There is a three-year statute of limitations period applicable to a Section 203 claim. At least 1,700 full time non-exempt employees in California separated

threshold for CAFA jurisdiction (even based on one violation per employee per month).

their employment with Tesla between November 22, 2018 and October 23, 2021. White Decl. ¶ 4.

23. The FAC alleges that "[t]hroughout the statutory period, [Tesla] maintained a policy and practice of not paying Plaintiff, the Class, and the Aggrieved Employees for all hours worked, including all overtime wages [because they] were required to work 'off the clock', and uncompensated." (Ex. A, Compl. ¶ 17). Plaintiff further alleges that "Plaintiff, the Class, and the Aggrieved Employees were required to undergo a security badge check and COVID temperature screening, involving a photograph taken at the entrance, uncompensated" and "were required to wait in line for the security badge check, photograph screening, and [sic] in order to clock into work each workday." *Id.*

24. Based on Plaintiff's allegations that the Class was required to work off the clock throughout the statutory period, it is appropriate to use a 100% violation rate for waiting time penalties to calculate the amount in controversy. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid.").

25. At all times during the alleged liability period, Tesla paid its hourly employees at least minimum wage. White Decl. ¶ 5. Using a blended minimum wage of $12.50 per hour final rate of pay based on the annual increases to the California minimum wage, the FAC claim for Labor Code Section 203 waiting time penalties places $3,000 in controversy for at least 1,700 terminated employee individually (i.e., $12.50 x 8 hours per day x 30 days=$3,000), and places at least $5,100,000 in controversy in the aggregate (i.e., $3,000 x 1,700 employees = **$5,100,000)**.

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

DB2/ 42983842.5

9

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

      **2.**      **Plaintiff's Seventh Cause of Action for Failure to Provide and Maintain Accurate Wage Statements Puts at Least $5,500,000 in Controversy.**

26. Plaintiff alleges that "[t]hroughout the statutory period, [Tesla] failed to furnish Plaintiff, the Class, and the Aggrieved Employees with accurate, itemized wage statements" and "the wage statements do not show [Tesla's] address as required by California law." (Ex. A, Compl. ¶¶ 22). Because Plaintiff alleges that Tesla violated Labor Code Section 226(a)(8) by not showing Tesla's address on all wage statements throughout the statutory period, it is appropriate to use a 100% violation rate to calculate the amount in controversy for this claim.

27. Labor Code section 226(e) provides that an employee can recover the greater of all actual damages or $50 for the initial violation and $100 per pay period for each subsequent violation, up to a maximum penalty of $4,000, plus costs and reasonable attorneys' fees, if an employer knowingly and intentionally fails to provide an accurate, itemized wage statement. Cal. Labor Code § 226(e).

28. Here, during the relevant one-year statute of limitations period, Tesla provided wage statements to Plaintiff and to putative class members on a bi-weekly basis. White Decl. ¶ 5. During the period from November 22, 2020 to April 21, 2022, Tesla is informed and believes that it maintained a constant headcount of, and issued bi-weekly wage statements to, at least 10,000 non-exempt employees in California during the one year limitations period applicable to this claim. White Decl. ¶ 5. Thus, Plaintiff's seventh cause of action for failure to provide accurate wage statements would put $5,500,000 in controversy after only six bi-weekly pay periods (i.e., (10,000 employees x $50 penalty for initial pay period) + (10,000 employees x $100 penalty x 5 subsequent pay periods) = **$5,500,000)**.

      **3.**      **Plaintiff's Fifth Cause of Action for Failure to Indemnify Necessary Expenditures Incurred in Discharge of Duties Puts at Least $2,400,000 in Controversy.**

29. Plaintiff alleges that "[t]hroughout the statutory period, [Tesla] wrongfully required Plaintiff and the Class to pay expenses that they incurred in

direct discharge of their duties for defendants without reimbursement, such as the purchase of scissors and masks, without reimbursement" and "Plaintiff and the Class were also required to use their own personal cellular telephones for work, which included to download an application in order to communicate with [Tesla]." (Ex. A, FAC ¶ 19). The FAC does not allege the amounts sought for these expenses, but Plaintiff alleges that he and the Class were damaged "at least in the amounts of the expenses they paid, or which were deducted by [Tesla] from their wages." (*Id.* at ¶ 60).

30.     Plaintiff's allegations of a company failure to provide reimbursement of cell phone expenses to putative class members permits Tesla to reasonably assume for purposes of removal "that each putative class member could recover unreimbursed expenses for every month worked." *Anderson v. Starbucks Corp.*, No. 3:20-CV-01178-JD, 2020 WL 7779015, at *4 (N.D. Cal. Dec. 31, 2020). In *Anderson*, the district court held that a monthly cell phone reimbursement of $32.50 per employee was a "reasonable basis for estimating" the amount in controversy on a cell phone reimbursement claim, and conservatively represents a recovery that would be "less than a full recovery of the monthly plan fee . . . ." *Id.* However, for purposes of this removal, Tesla uses an even more conservative assumption that Plaintiff is seeking an average monthly recovery of $20.00 per employee.

31.     As stated above, Tesla is informed and believes that it maintained a constant headcount of at least 10,000 non-exempt employees in California during at least the year prior to Plaintiff's filing of his Complaint. White Decl. ¶ 5. At $20.00 in alleged unpaid cell phone reimbursements per month, Plaintiff's fifth cause of action for failure to indemnify employees for necessary cell phone expenses would place at least $2,400,000 in controversy for that one-year period alone (i.e., $20 monthly expenses x 12 work months x 10,000 employees = **$2,400,000**).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

11

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693

### 4. The Amount in Controversy Exceeds $5 Million.

32. Aggregating the figures above for only these three causes of action, Plaintiff's alleged amount in controversy is at least $13,000,000 (i.e., $5,100,000 + $5,500,000 + $2,400,000) based on the allegations in the claims discussed above. Thus, the CAFA $5 million requirement is satisfied based on these claims alone, even without the need to assess the value of Plaintiff's First, Second, Third, Fourth, Eighth, or Ninth Causes of Action (failure pay minimum wages, failure to pay overtime wages, failure to provide meal periods, failure to authorize and permit rest periods, unfair business practices, or PAGA).

### 5. Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.

33. Plaintiff seeks to recover attorneys' fees under various provisions of the Labor Code, including section 226. (Ex. A, FAC ¶¶ 41, 49, 62, 69, 77, 96, 105; Prayer for Relief, ¶¶ 8, 13, 18, 23, 28, 33, 38, 43, 49). Future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Anderson*, 2020 WL 7779015, at *4.

34. Although Tesla denies Plaintiff's claim for attorneys' fees, inclusion of "reasonable" attorneys' fees for purposes of removal adds another $3,250,000 in controversy (25% of $13,000,000), bringing the total amount in controversy to at least **$16,250,000**.

## IV. VENUE

35.     This action was originally filed in the Superior Court for the County of Bernardino.  Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

## V.  NOTICE

36.     Tesla will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI.  CONCLUSION

37.     Based on the foregoing, Tesla requests that this action be removed to this Court.  If any question arises as to the propriety of the removal of this action, Tesla respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated:  April 22, 2022                              MORGAN, LEWIS & BOCKIUS LLP

By   /s/ Brian D. Berry
     Brian D. Berry
     Andrea Fellion
     Kassia Stephenson
     Attorneys for Defendant
     TESLA, INC.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 42983842.5

13

TESLA'S NOTICE OF REMOVAL
Case No. 5:22-cv-00693