Damion D. D. Robinson, Bar No. 262573
    damion.robinson@diamondmccarthy.com
DIAMOND McCARTHY LLP
333 South Hope Street, Suite 4050
Los Angeles, California 90071
Tel.    (424) 278-9518

Attorneys For Defendant
ATLANTIC SOLUTIONS GROUP, INC.

MORGAN, LEWIS & BOCKIUS LLP
Brian D. Berry, Bar No. 229893
Andrea Fellion, Bar No. 262278
Kassia Stephenson, Bar No. 336175
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:   +1.415.442.1000
Fax:  +1.415.442.1001
brian.berry@morganlewis.com
andrea.fellion@morganlewis.com
kassia.stephenson@morganlewis.com

Attorneys for Defendant
TESLA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCIO JUAREZ RUIZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TESLA, INC., a Delaware corporation dba TESLA MOTORS, INC.; ATLANTIC SOLUTIONS GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:22-cv-0693 FMO (KKx)<br><br>Assigned to:<br>HON. FERNANDO M. OLGUIN<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS REPRESENTATIVE ACTION ALLEGATIONS, AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      November 17, 2022<br>Time:      10:00 a.m.<br>Location: Courtroom 6D<br>               United States Courthouse<br>               350 West 1st Street,<br>               6th Floor<br>               Los Angeles, CA 90012<br><br>[Filed concurrently:<br>1.  Declaration of Sam Palazzolo;<br>2.  Declaration of Damion Robinson] |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 17, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Fernando M. Olguin, United States District Judge, in Courtroom 6D of the United States District Court for the Central District of California, located at 350 West 1st Street, 6th Floor, Los Angeles, California 90012, Defendant Atlantic Solutions Group, Inc. d/b/a Empire Workforce Solutions ("Empire") and Defendant Tesla, Inc. d/b/a Tesla Motors, Inc. ("Tesla") will and hereby do move for an order (a) compelling individual arbitration of all claims of Plaintiff Rocio Juarez Ruiz ("Ruiz"); and (b) staying this action pending the outcome of arbitration.

This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), including 9 U.S.C. § 3 (stay) and § 4 (motion to compel arbitration) on the following grounds.

Empire is a temporary staffing firm, which hired Ruiz on or about May 6, 2021 to work for its client Tesla. At the start of his employment, Ruiz executed a plain and unambiguous agreement to arbitrate all employment claims ("Agreement"). *See* Declaration of Sam Palazzolo in Support of Empire's Motion to Compel Arbitration ("Palazzolo Decl.") ¶ 13, Ex. 1. As part of that Agreement, Ruiz also agreed to waive his ability to bring claims on behalf of others, including bringing or participating in class, collective, and non-individual representative actions. *Id.*, ¶ 12.

Arbitration provisions are highly favored as a matter of strong public policy and are enforceable according to their plain terms. Most recently in *Viking River Cruises, Inc. v. Moriana*, 213 L. Ed. 2d 179, 142 S. Ct. 1906 (2022), reh'g denied, No. 20-1573, 2022 WL 3580311 (U.S. Aug. 22, 2022), the Court reaffirmed the basic principle that individual claims may be compelled to arbitration and distinguished

"'individual' PAGA[1] claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative'…PAGA claims arising out of events involving other employees."  Pursuant to the terms of his Agreement, Ruiz's individual PAGA claim must be arbitrated and his non-individual PAGA claim must be excluded from arbitration and dismissed.  This Court can and should enforce the parties' clear agreement and order arbitration on an individual basis.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Sam Palazzolo and Damion Robinson, the records and files herein, and such other matters as the Court may properly consider at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 5, 2022.  *See* Robinson Decl. ¶ 7.

Dated:  October 19, 2022   Respectfully submitted,

      By: s/ Damion Robinson
        Damion D. D. Robinson
        DIAMOND McCARTHY LLP

      Attorneys for Defendant
      ATLANTIC SOLUTIONS GROUP, INC.

Dated:  October 19, 2022   Respectfully submitted,

      By:  /s/ Andrea Fellion
        Brian D. Berry
        Andrea L. Fellion
        MORGAN, LEWIS & BOCKIUS LLP

      Attorneys for Defendant
      TESLA, INC.

---

[1] Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, *et seq.* ("PAGA").

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................... 1

II.     BACKGROUND ............................................................ 2

    A.   Empire's Business Involves Interstate Commerce ............................. 2

    B.   Empire and Ruiz Entered into a Valid, Enforceable, Arbitration Agreement. ...................................... 2

    C.   The Terms of the Arbitration Agreement ............................. 3

    D.   Plaintiff Filed a Class and PAGA Complaint, Tesla Removed, and Plaintiff Amended his Complaint to Allege only PAGA. ...................................... 4

III.    ARGUMENT ............................................................... 5

    A.   The Federal Arbitration Act Governs Parties' Arbitration Agreement. ...................................... 5

    B.   The Arbitration Agreement Governs All Claims and Parties. ............. 7

        1.   The Arbitration Agreement Applies to Ruiz's Claims. ............. 7

        2.   The Agreement Covers Empire and Tesla. ............................. 8

    C.   Under *Viking*, Plaintiff's Obligation to Arbitrate His Individual PAGA Claim Is Enforceable. ............................. 9

    D.   Under *Viking*, the Court Should Dismiss this Action After Compelling Individual Arbitration .................................. 12

IV.     CONCLUSION ........................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.,*
  570 U.S. 228 (2013) ............................................................... 5

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) .......................................................... 5, 11

*Carmax Superstores Cal., LLC v. Hernandez,*
  94 F. Supp. 3d 1078 (C.D. Cal. 2015) .................................... 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
  207 F.3d 1126 (9th Cir. 2000) ............................................ 5, 6

*Cione v. Foresters Equity Servs., Inc.,*
  58 Cal. App. 4th 625 (1997) ................................................... 5

*Circuit City Stores v. Adams*
  (2001) 532 U.S. 105 ............................................................... 6

*Collins & Aikman Prods. Co. v. Building Sys., Inc.,*
  58 F.3d 16 (2d Cir. 1995) ...................................................... 7

*Epic Sys. Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) ........................................................... 5

*Fardig v. Hobby Lobby Stores, Inc.,*
  2014 WL 4782618 (C.D. Cal. 2014) .................................... 10

*Franklin v. Community Regional Med. Ctr.,*
  998 F.3d 867 (9th Cir. 2021) ................................................. 8

*Garcia v. Pexco, LLC,*
  11 Cal. App. 5th 782 (2017) .................................................. 8

*Golenia v. Bob Baker Toyota,*
  915 F. Supp. 201 (S.D. Cal. 1996) ........................................ 8

*Grabowski v. Robinson,*
  817 F. Supp. 2d 1159 (S.D. Cal. 2011) ............................... 10

*Greentree Fin. Corp. v. Bazzle*,
  539 U.S. 444 (2003) ............................................................................. 5

*Houlihan v. Offerman & Co.*,
  31 F.3d 692 (8th Cir. 1994) ............................................................... 13

*Johnson v. Lowe's Home Centers, LLC*,
  No. 221CV00087TLNJDP, 2022 WL 4387796 (E.D. Cal. Sept. 22,
  2022) ............................................................................................... 11, 12

*Katzenbach v. McClung*,
  379 U.S. 294 ....................................................................................... 6

*Kim v. Tinder, Inc.*,
  2018 WL 6694923 (C.D. Cal. July 12, 2018) ....................................... 6

*Koenig v. Warner Unif. Sch. Dist.*,
  41 Cal. App. 5th 43 (2019) .......................................................... 11, 12

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ................................................................... 5, 10

*Langston v. 20/20 Cos., Inc.*,
  2014 WL 5335734 (C.D. Cal. 2014) .................................................. 10

*Macaulay v. Norlander*,
  12 Cal. App. 4th 1 (1992) ................................................................... 9

*Metalclad Corp. v. Ventana Env. Org. P'ship*,
  109 Cal. App. 4th 1705 (2003) ........................................................... 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ............................................................................ 5

*Moncharsh v. Heily & Blasé*,
  3 Cal. 4th 1 (1992) ............................................................................. 5

*Mundi v. Union Sec. Life*,
  555 F.3d 1042 (9th Cir. 2009) ............................................................. 9

*Nguyen v. Applied Med. Res. Corp.*,
  4 Cal. App. 5th 232 (2016) ................................................................. 7

*O'Malley v. Wilshire Oil Co.*,
  59 Cal. 2d 482 ................................................................................... 5

- iii -

*Philadelphia Indem. Ins. Co. v. SMG Holdings, Inc.*,
   44 Cal. App. 5th 834 (2019) ................................................................. 6

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) ........................................................................ 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*
   (1967) 388 U.S. 395 .......................................................................... 6, 8

*Quevedo v. Macy's, Inc.*,
   798 F. Supp. 2d 1122 (C.D. Cal. 2011) .............................................. 10

*Rajagopalan v. NoteWorld, LLC*,
   718 F.3d 844 (9th Cir. 2013) ................................................................ 9

*Rodriguez v. American Technologies, Inc.*,
   136 Cal. App. 4th 1110 (2006) ............................................................. 6

*Shams v. Revature LLC*,
   No. 22-CV-01745-NC, 2022 WL 3453068 (N.D. Cal. Aug. 17, 2022) ............. 11

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ................................................................ 8

*Steele v. Am. Mortg. Mgmt. Servs.*
   2012 WL 5349511 (E.D. Cal. Oct. 26, 2012) ....................................... 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ................. 10

*Thomas v. Westlake*,
   204 Cal. App. 4th 605 (2012) ............................................................... 9

*Turtle Ridge Media Group, Inc. v. Pac. Bell Directory*,
   140 Cal. App. 4th 828 (2006) ............................................................... 9

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
   995 F. Supp. 1060 (D. Ariz. 1997) ....................................................... 8

*Viking River Cruises, Inc. v. Moriana*,
   213 L. Ed. 2d 179, 142 S. Ct. 1906 (2022) .................................*passim*

**Statutes**

9 U.S.C. § 2 ................................................................................................ 6

- iv -

9 U.S.C. §§ 2-4 ..................................................................................................6

9 U.S.C. § 3 ..............................................................................................1, 13

Cal. Civ. Code § 1643 ......................................................................................11

Cal. Code Civ. Proc., § 1280 *et seq.* ...............................................................5

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ...............................................1

Labor Code Private Attorneys General Act of 2004,
    Cal. Lab. Code § 2698, *et seq.* ..........................................................2, 8

Cal. Labor Code Section 2699(a) ....................................................................2

**Other Authorities**

14A Cal. Jur. 3d Contracts § 216..................................................................11

Fed. R. Evid. 201 .............................................................................................7

L.R. 7-3 .............................................................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Rocio Juarez Ruiz ("Ruiz") worked for staffing company Defendant Atlantic Solutions Group, Inc. d/b/a Empire Workforce Solutions ("Empire") and performed services for Defendant Tesla, Inc. ("Tesla").  As part of that employment, Ruiz agreed to arbitrate any claim relating to his employment with Empire and Tesla and waived his ability to bring class, collective, and representative claims on behalf of others.  Plaintiff conceded that his arbitration agreement is enforceable when he chose to abandon his class claims.  Under now-governing federal law, the Court must also compel Plaintiff's individual PAGA claim to arbitration.

In *Viking River Cruises, Inc. v. Moriana*, 213 L. Ed. 2d 179, 142 S. Ct. 1906 (2022), reh'g denied, No. 20-1573, 2022 WL 3580311 (U.S. Aug. 22, 2022) ("*Viking*"), the U.S. Supreme Court held that the Federal Arbitration Act "preempts the rule of *Iskanian* [*v. CLS Transp. Los Angeles, LLC,* 59 Cal. 4th 348 (2014)] insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate."  142 S.Ct. 1906, 1917, 1924-25.  As a result, the employer in *Viking* "was entitled to enforce the agreement insofar as it mandated arbitration of [plaintiff's] individual PAGA claim," and the trial court was directed to compel arbitration of the plaintiff's individual claim and dismiss the non-individual PAGA claims for lack of statutory standing.  *Id.* at 1925.

The same is true here.  Ruiz is contractually bound to individually arbitrate his employment claims under the terms of the Arbitration Agreement, including his individual PAGA claim.  Ruiz admitted that the Arbitration Agreement both encompassed his claims and was enforceable when he voluntarily dismissed his class claims.  Ruiz, however, also agreed to waive his non-individual representative action claims.  *Viking* makes clear that those claims must be treated in the same manner.  It requires the Court to compel arbitration of Plaintiff's individual PAGA claim and stay or dismiss his remaining non-individual claims for lack of standing.  This result is

consistent with PAGA's express language that a PAGA civil action can only be pursued if it is an action "brought by an aggrieved employee *on behalf of himself or herself* and other current or former employees…."  Labor Code Section 2699(a) (emphasis added).  However, if for any reason the Court orders arbitration of Plaintiff's individual PAGA claim but does not dismiss his remaining non-individual claims, it must stay this action pending the arbitration of his individual PAGA claim.

## II.  BACKGROUND

### A.  Empire's Business Involves Interstate Commerce

Empire is a temporary staffing firm based in Ontario, California.  Declaration of Sam Palazzolo in Support of Empire's Motion to Compel Arbitration ("Palazzolo Decl.") ¶ 2.  It employs well over 3,000 temporary staff in California and maintains offices in seven states, including California, Georgia, Nevada, New Jersey, New York, Pennsylvania, and Texas.  *Id.*  As a temporary staffing firm, Empire handles all recruiting, payroll, workers' compensation, and benefits for its temporary staff, which it assigns to its clients such as Tesla.  *Id.* ¶ 3.

Empire's primary line of business is light industrial staffing, and it provides temporary staff to many multi-state companies such as Tesla.  Palazzolo Decl. ¶ 4.  Empire also provides temporary staff companies engaged in interstate logistics and transportation and serves a number of interstate shipping companies.  *Id.*

### B.  Empire and Ruiz Entered into a Valid, Enforceable, Arbitration Agreement.

Empire hired Ruiz in May 2021 and assigned him to work as an inspector for Tesla in San Bernardino, California.  Plaintiff's Second Amended Complaint ("SAC") ¶ 9; Palazzolo Decl. ¶ 4.  When he was hired, Ruiz executed Empire's standard Arbitration Agreement as part of his onboarding documentation via an online portal.  Palazzolo Decl. ¶ 12.  The Arbitration Agreement is a stand-alone, three-page contract, and Ruiz electronically agreed on May 6, 2021. Palazzolo Decl. ¶ 13, Ex. 1.  Like other employees, Ruiz digitally signed the Arbitration Agreement using a unique, password-protected user profile under supervision of an Empire manager.  *Id.* ¶¶ 5-9.

Also, during his onboarding, Ruiz executed a written acknowledgment of Empire's employee handbook.  Palazzolo Decl. ¶ 14, Ex. 2.  Empire's handbook reiterates that all employment-related disputes will be arbitrated: "[a]s part of your employment with the company, you have agreed to arbitrate all disputes relating to any aspect of your employment."  *Id.* ¶ 15, Ex. 3 at p. 28.   The handbook also provides a complete copy of the JAMS Rules governing arbitration.  *Id.*, Ex. 3.

According to Plaintiff's Second Amended Complaint, Ruiz continues to serve as a Tesla inspector to this day.  SAC ¶ 9.

### C.   The Terms of the Arbitration Agreement

The Arbitration Agreement broadly applies to all disputes arising from, related to, or having any relationship with Ruiz and Empire.  Palazzolo Decl. Ex. 1, ¶ 1.  The agreement also applies to Empire's co-employers and partners.  Palazzolo Decl., Ex. 1 at p. 1 ¶ 1.[2]  It broadly applies to any disputes between the Parties and confirms that it encompasses "all disputes whether based on tort, contract, statute … equitable law, or otherwise."  *Id.* at ¶ 2.  It expressly includes claims under the "California Labor Code," which includes the PAGA.  *Id.*

The Arbitration Agreement confirms that Ruiz has waived his ability to bring claims on behalf of others, whether on a class, collective, or other claim-aggregating basis.  *Id.* ¶¶ 11-12.  In two consecutive paragraphs, the Arbitration Agreement confirms that Ruiz "agrees that [he] is waiving the right to bring, or to participate in, a class action or collective action, whether filed in a court of law or in arbitration" and Ruiz "further agrees that [he] is waiving the right to bring, or to participate in, a representative action."  *Id.* ¶¶ 11-12.  Finally, the Parties agreed that if any portion of the Arbitration Agreement is "deemed invalid or unenforceable, such provision shall be severed and the remainder of [the] Agreement shall be enforceable."  *Id.* ¶ 18.

---

[2] The agreement goes on to provide clickable hyperlinks to both the JAMS Standards and the JAMS Rules.  *Id.*

**D.**  **Plaintiff Filed a Class and PAGA Complaint, Tesla Removed, and Plaintiff Amended his Complaint to Allege only PAGA.**

Despite his agreement to arbitrate all claims, Ruiz filed an unverified putative class action complaint in the San Bernardino County Superior Court.  In that Complaint, Ruiz alleged class claims for: (1) failure to pay minimum wages; (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages; (7) failure to provide accurate itemized wage statements; and (8) unfair business practices.  Declaration of Damion Robinson in Support of Motion to Compel Arbitration ("Robinson Decl.") ¶ 2.

On January 21, 2022, Plaintiff filed his First Amended Complaint ("FAC") which alleges the same class claims and adds a ninth cause of action alleging civil penalties pursuant to PAGA. *Id.* ¶ 3.  Tesla timely removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA").  *Id.* at ¶ 4.   The parties have agreed to a series of stays, first to await the Supreme Court's ruling in *Viking*, and then to discuss the impact of that decision on this case. *Id.* ¶ 5.

The Supreme Court issued its decision in *Viking* on June 15, 2022, reaffirming the basic principle that individual claims may be compelled to arbitration.  In *Viking*, the court distinguished "'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative'…PAGA claims arising out of events involving other employees." 142 S. Ct. at 1916.

On September 19, 2022, the Parties entered a joint stipulation that would allow Plaintiff to file a Second Amended—PAGA Only—Complaint.  Robinson Decl. ¶ 6. Plaintiff filed his operative Second Amended Complaint ("SAC") that same day. *Id.* Pursuant to the terms of their Stipulation, Defendants' deadline to respond Plaintiff's SAC is October 19, 2022. *See* Dkt. Nos. 21, 22, 24.

- 4 -

## III.   ARGUMENT

### A.   The Federal Arbitration Act Governs Parties' Arbitration Agreement.

The Federal Arbitration Act ("FAA") preempts any state law that prohibits arbitration of particular claims or imposes procedural requirements that limit arbitrability.  *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622-23 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236-38 (2013).  The FAA sets forth a "liberal federal policy favoring arbitration agreements" and reinforces "the fundamental principle that arbitration is a matter of contract."  *Epic Systems*, 138 S. Ct. at 1621; *Concepcion*, 563 U.S. at 339.  The primary purpose of the FAA is to "enforce private agreements into which parties [have] entered."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625-26 (1985).  To that end, the FAA requires courts to "rigorously enforce agreements to arbitrate."  *Id.* at 626; *see also Epic Systems*, 138 S.Ct. at 1621.  The FAA mandates that any doubts as to arbitrability should be resolved, whenever possible, in favor of arbitration.  *See*, *e.g.*, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019); *Greentree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003);  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.") (quoting *Moses H. Cone Mem'l Hosp. v. Mecury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).[3]

---

[3] California also has a "strong public policy in favor of arbitration," embodied in the California Arbitration Act ("CAA").  Cal. Code Civ. Proc., § 1280 *et seq.*; *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 245-46 (2012); *Moncharsh v. Heily & Blasé*, 3 Cal. 4th 1, 9 (1992).  As a result, "a heavy presumption weighs the scales in favor of arbitrability" under California law as well.  *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 642 (1997). An arbitration agreement will be enforced unless, "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" the dispute.  *O'Malley v. Wilshire Oil Co.*, 59 Cal. 2d 482, 491 (emphasis added).

When considering a motion to compel arbitration under the FAA, the Court's role is limited to answering two questions: (1) does a valid agreement to arbitrate exist; and, if it does, (2) does the arbitration agreement encompass the dispute or claims at issue? *Philadelphia Indem. Ins. Co. v. SMG Holdings, Inc*., 44 Cal. App. 5th 834, 840 (2019); *Chiron Corp.*, 207 F.3d at 1130.  Where, as here, the answer to both of these questions is "yes," the Court must compel arbitration.  9 U.S.C. §§ 2-4.

Here, the FAA governs here for two primary reasons:

First, the parties expressly selected the FAA to govern.  Paragraph 3 of the Arbitration Agreement provides that it will be "governed and construed in accordance with Federal Arbitration Act."  Palazzolo Decl., Ex. 1 at p. 1 (initial caps omitted).  It states that "[a]ll issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by, and construed in accordance with" the FAA.  *Id.*  Choice-of-law provisions selecting the FAA are valid and enforceable.  *See*, *e.g.*, *Rodriguez v. American Technologies, Inc.*, 136 Cal. App. 4th 1110, 1122 (2006); *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018).

Second, even without a choice-of-law clause, the minimal requirement of "involving commerce," 9 U.S.C. § 2, is readily satisfied.  The FAA applies to any arbitration agreement in any way touching upon interstate commerce.  *Circuit City Stores v. Adams* (2001) 532 U.S. 105, 112-13; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 401-02 & fn.7.  Congress intended to "exercise [its] commerce power to the full," meaning that any connection with interstate commerce will suffice. *Circuit City Stores*, 535 U.S. at 112 (quoting *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995), modification in *Circuit City Stores*).  This has generally been interpreted to mean that the business has some impact, even slight, on interstate commerce.  *See Katzenbach v. McClung*, 379 U.S. 294 (finding that Commerce Clause was satisfied where businesses of the type at issue, in the aggregate, had an impact on interstate commerce).  Courts have consistently held that

an employee arbitration agreement is subject to the FAA where the employer's business, as a whole, involves interstate commerce. *Carmax Superstores Cal., LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1101-02 (C.D. Cal. 2015) (collecting cases); *see also Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 245-46 (2016).

It is beyond dispute that the business of Empire and Tesla impacts interstate commerce. Empire is a multi-state firm with offices in seven states, which services interstate shipping and logistics companies, among others. Palazzolo Decl., ¶¶ 2-4. It also recruits and assigns staff across state lines—*i.e.*, assigning workers in one state to clients in other states. *Id*. The impact of Tesla's business on interstate commerce is also clear. It is a nationwide automotive company, which sells vehicles throughout the United States and internationally, and maintains dealerships around the world.[4]

## B.   The Arbitration Agreement Governs All Claims and Parties.

### 1.   The Arbitration Agreement Applies to Ruiz's Claims.

The Arbitration Agreement plainly covers Ruiz's claims, as evidenced by the fact that he voluntarily dismissed his class and non-PAGA claims. The plain language of the clause defining covered disputes is all-encompassing, applying to any and all disputes arising from Ruiz's employment. Indeed, the Arbitration Agreement applies to "any controversy, claim, or dispute arising from, related to, or *having any relationship or connection whatsoever* with the employment of, or the association between, the employee . . . and Atlantic Solutions Group Inc. dba Empire Workforce Solutions." Palazzolo Decl., ¶ 2, Ex. 1 (emphasis added).

This is a prototypical "broad clause," covering all disputes "related to" or arising in any way from the employment relationship. See *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). "Broad clauses" have

---

[4] Tesla's Form 10-K confirms that it has manufacturing centers throughout the United States and world. *See* https://www.sec.gov/Archives/edgar/data/1318605 /000095017022000796/tsla-20211231.htm (last accessed October 12, 2022). Empire and Tesla respectfully request judicial notice of this fact as not reasonably subject to dispute. Fed. R. Evid. 201.

consistently been interpreted to cover all disputes between the parties other than those specifically excluded.  *E.g.*, *Southland Corp*, 465 U.S. at 15 n.7; *Prima Paint*, 388 U.S. at 402; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-21 (9th Cir. 1999) (collecting cases).  In the employment context, "broad" clauses apply to all claims of an employee against the employer, unless they are specifically carved out.  *See*, *e.g.*, *Golenia v. Bob Baker Toyota*, 915 F. Supp. 201, 205 (S.D. Cal. 1996); *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1067-68 (D. Ariz. 1997); *Steele v. Am. Mortg. Mgmt. Servs.* 2012 WL 5349511, at *3 (E.D. Cal. Oct. 26, 2012).

Ruiz's wage-and-hour claims are expressly included.  *See* Palazzolo Decl., Ex. 1 at p. 1 ¶ 2 ("Included within the scope this Agreement are all disputes, whether based on tort, contract, statute. . .").  The agreement makes clear that it covers claims arising under the "California Labor Code."  *Id.*  All of Ruiz's substantive claims arise under the California Labor Code.  PAGA is codified at Labor Code § 2698, *et seq.*  Even if Paragraph 1 were not clear that it covers all of Ruiz's claims—and it is—Paragraph 2 reinforces that the Arbitration Agreement is intended to govern exactly this type of dispute.  *Id.*

## 2.  The Agreement Covers Empire and Tesla.

A non-signatory to an arbitration agreement may enforce an arbitration agreement "if relevant state contract law allows the litigant to enforce the agreement." *Franklin v. Community Regional Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013)).  Under California law, a third-party beneficiary may enforce an arbitration agreement.  *Id.* This rule applies to a temporary staffing firm's arbitration agreement with its employees.  *Id.* at 871-875; *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 785-86 (2017) (compelling arbitration against staffing company and client even though client did not execute arbitration agreement).

The Arbitration Agreement makes clear that it is intended to cover claims asserted against Empire's clients.  It expressly includes claims against "co-

- 8 -

employers." Palazzolo Decl., Ex. 1, ¶ 1. Plaintiff sues Empire and Tesla as joint employers, alleging that both of them "at all relevant times … employed Plaintiff and the other Aggrieved Employees, and exercised control over their wages, hours, and working conditions." SAC ¶ 14. Because claims against Tesla are specifically covered, Ruiz must be compelled to arbitrate them as a matter of contract. As an intended third-party beneficiary of the Arbitration Agreement, Tesla has the right to enforce that agreement. *See Mundi v. Union Sec. Life*, 555 F.3d 1042, 1046 (9th Cir. 2009); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013).

California law is equally clear that allegations of agency, alter ego, and joint employment entitle the defendants to enforce arbitration agreements with any of them. *Macaulay v. Norlander*, 12 Cal. App. 4th 1, 7-8 (1992). Plaintiff has sued Empire and Tesla as alleged agents and joint employers with one another and has asserted all of his claims against both companies as "Defendants" jointly. A plaintiff is bound by these allegations when it comes to enforcing an arbitration agreement. *Thomas v. Westlake*, 204 Cal. App. 4th 605, 614-15 (2012). His claims against Tesla are "inherently inseparable from arbitrable claims against signatory defendants," and must be referred to arbitration. *Metalclad Corp. v. Ventana Env. Org. P'ship*, 109 Cal. App. 4th 1705, 1713 (2003) (citation and quotation marks omitted) (reversing order declining to compel arbitration of claims against non-signatory); *see also Turtle Ridge Media Group, Inc. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 832-34 (2006).

## C.    Under *Viking*, Plaintiff's Obligation to Arbitrate His Individual PAGA Claim Is Enforceable.

In *Viking*, the U.S. Supreme Court recently held that the FAA preempts the "indivisibility" rule in *Iskanian* "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate" and operates to bar an individual PAGA claim from being compelled to arbitration. 142 S.Ct. at

1922-25.[5]  As a result, the employer in *Viking* "was entitled to enforce the agreement

insofar as it mandated arbitration of [plaintiff's] individual PAGA claim." *Id.* at 1925.

Here, Plaintiff agreed to arbitrate all claims, including his PAGA claim, on an

individual basis.  In two parallel, adjacent provisions, the Arbitration Agreement

expressly precludes Plaintiff from asserting a non-individual claim in arbitration,

whether in the form of a class, collective, or representative action.  Ex. 1, ¶ 11 (barring

class or collective actions), ¶ 12 (barring non-individual PAGA actions).  Even if the

Agreement did not contain this express limitation, the U.S. Supreme Court has made

clear that a court cannot infer from an arbitration agreement's "silence or ambiguity"

that it permits arbitration on a non-individual basis.  *See Lamps Plus*, 139 S. Ct. at

1417 ("Neither silence nor ambiguity provides a sufficient basis for concluding that

parties to an arbitration agreement agreed [arbitrate on a class-wide basis].")); *Stolt-*

*Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687, 130 S. Ct. 1758, 1776,

176 L. Ed. 2d 605 (2010) ("We think that the differences between bilateral and class-

action arbitration are too great for arbitrators to presume, consistent with their limited

powers under the FAA, that the parties' mere silence on the issue of class-action

arbitration constitutes consent to resolve their disputes in class proceedings.").

Nor is there any doubt that the Agreement permits Plaintiff to pursue his

individual PAGA claim in arbitration.  According to the Agreement, Plaintiff waived

his "right to bring, or to participate in, a class action or collective action" or a

"representative action, including a [PAGA] action."  Ex. 1, ¶¶ 11, 12.  It says nothing

about precluding him from pursuing a PAGA claim on an individual basis.  Following

---

[5] Prior to *Viking*, California courts followed the so-called "*Iskanian* rule," that a PAGA claim could not be divided into individual and non-individual components and, thus, could never be compelled to individual arbitration.  Even before *Viking*, however, federal courts routinely disagreed with *Iskanian* as violative of the FAA.  *See*, *e.g.*, *See*, *e.g.*, *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1142 (C.D. Cal. 2011); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1180-81 (S.D. Cal. 2011); *Fardig v. Hobby Lobby Stores, Inc.*, 2014 WL 4782618, at *4 (C.D. Cal. 2014); *Langston v. 20/20 Cos., Inc.*, 2014 WL 5335734, at *7 (C.D. Cal. 2014).

*Viking*, courts recognize that this type of "representative" action waiver is enforceable because it waives only the employee's right to represent other employees, but does not waive the employee's right to represent the State in an individual PAGA arbitration. *See Viking*, 142 S.Ct. at 1916, 1924; *Shams v. Revature LLC*, No. 22-CV-01745-NC, 2022 WL 3453068 (N.D. Cal. Aug. 17, 2022), at *2 (enforcing PAGA waiver under *Viking River* because the "context of where 'private attorney general' appears makes clear that the waiver applies to non-individual representative actions, not [the employee's] individual PAGA claims on behalf of the State."); *Johnson v. Lowe's Home Centers, LLC*, No. 221CV00087TLNJDP, 2022 WL 4387796, at *2 (E.D. Cal. Sept. 22, 2022) (citing *Shams*).  This is also consistent with the "cardinal rule[]" of contract interpretation that a contract must be given a lawful construction wherever possible.  14A Cal. Jur. 3d Contracts § 216; *see also* Cal. Civ. Code § 1643 ("such an interpretation as will make it lawful [and] operative"); *Koenig v. Warner Unif. Sch. Dist.*, 41 Cal. App. 5th 43, 55 (2019) (noting that courts, "will not construe a contract in a manner that will render it unlawful").

Compelling arbitration also comports with the basic rationale and economic realities that motivate waivers of class actions, collective actions, or representative PAGA actions alike.  Non-individual PAGA actions, like class actions, involve large, complex, costly, and protracted proceedings, brought on behalf of large numbers of employees who have expressed no desire to sue.  "Arbitration is poorly suited to the higher stakes" of this type of litigation.  *Concepcion*, 563 U.S. at 350.  By exponentially increasing the size of the case and the employer's litigation exposure, representative actions give rise to the same "risk of 'in terrorem' settlements" as class actions.  *Viking*, 142 S.Ct. at 924 (quoting *Concepcion*, 563 U.S. at 350).  It is rational for employers and employees to agree to opt out of these complex and uncertain proceedings, and to elect to resolve any legitimate disputes on an individual basis through relatively quick and inexpensive arbitration proceedings.

Finally, even if the Agreement's reference to a "representative action" were

1  (erroneously) deemed to constitute a wholesale waiver of Plaintiff's right to pursue

2  PAGA claims, the Agreement is still enforceable as to the individual component of the

3  PAGA claim because the Agreement has a severability clause.  *See Viking* 142 S. Ct.

4  at 1925 ("[T]he severability clause in the agreement provides that if the waiver

5  provision is invalid in some respect, any 'portion' of the waiver that remains valid

6  must still be 'enforced in arbitration.'").  "California cases take a very liberal view of

7  severability, enforcing valid parts of an apparently indivisible contract where the

8  interests of justice or the policy of the law would be furthered."  *Koenig*, 41

9  Cal.App.5th at 56 (citation omitted).  Indeed, the Arbitration Agreement provides that

10  "[i]f any provision of this Agreement is deemed invalid or unenforceable, such

11  provision shall be severed and the remainder of this Agreement shall be enforceable."

12  Ex. 1 at ¶ 18.  Thus, the "remainder" of the Agreement that requires individual

13  arbitration of all claims would be enforceable even if the "representative" action

14  waiver were deemed an unenforceable wholesale waiver of PAGA claims.  *See*

15  *Viking*, 142 S. Ct. at 1924-25 (holding that the severability clause entitled employer to

16  enforce the agreement "insofar as it mandated arbitration of [the employee's]

17  individual PAGA claim."); *Johnson*, 2022 WL 4387796, at *4 (recognizing that under

18  *Viking River,* the severability clause would require the enforcement of the arbitration

19  agreement "even if the Court construed the provision as a wholesale waiver").

20      For these reasons, the Arbitration Agreement is an enforceable agreement that

21  requires Plaintiff to arbitrate his individual PAGA claim.  Thus, the Court must

22  compel individual arbitration.

23      **D.    Under *Viking*, the Court Should Dismiss this Action After
           Compelling Individual Arbitration.**

24

25      In *Viking*, the Supreme Court held that "PAGA provides no mechanism to

26  enable a court to adjudicate non-individual PAGA claims once an individual claim has

27  been committed to a separate proceeding."  142 S.Ct. at 1913.  This is because

28  "[u]nder PAGA's [statutory] standing requirement, a plaintiff can maintain non-

individual PAGA claims in an action only by virtue of also maintaining an individual

claim in that action." *Id.* (citing Cal. Lab. Code §§ 2699(a) and (c), which together only authorize PAGA civil actions "brought by an aggrieved employee on behalf of himself or herself and other current or former employees"). As a result, the employee "lack[ed] statutory standing to continue to maintain her non-individual claims in court, and the correct course was to dismiss her remaining claims." *Id.*

*Viking* requires the same outcome here. This Court should compel Plaintiff's individual PAGA claim to arbitration and dismiss the non-individual claims. Were the Court to decline at this time to follow *Viking* on this point as to dismissal of Plaintiff's non-individual claims, the Court still must stay this action pending Plaintiff's individual arbitration. *See* 9 U.S.C. § 3 ("the court … shall on application of one of the parties stay the trial of the action until such arbitration has been had"). A stay preserves the status quo and the jurisdiction of the arbitrator. Where a valid arbitration agreement exists, the stay is mandatory. *Houlihan v. Offerman & Co.*, 31 F.3d 692, 695 (8th Cir. 1994) ("A federal court must stay proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement").

## IV.   CONCLUSION

*Viking* worked a significant change in controlling law. It overruled the *Iskanian* rule "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate" and found that individual PAGA claims may be compelled to arbitration. *Viking,* 142 S.Ct. at 1924. This change is dispositive of Plaintiff's claims here. The Parties are subject to a binding arbitration agreement that requires Plaintiff to arbitrate any employment-related claims on an individual basis. Thus, the Court should grant this motion, compel arbitration of Plaintiff's individual PAGA claim, and dismiss his non-individual PAGA claims. If the Court declines at this time to dismiss those remaining claims, it must stay the non-individual PAGA claims during the pendency of the individual arbitration.

MOTION TO COMPEL ARBITRATION
CASE NO. 5:22-CV-00693-FMO-KK

Dated:  October 19, 2022          Respectfully submitted,


                                  By: /s/ Damion Robinson
                                      Damion D. D. Robinson
                                      DIAMOND McCARTHY LLP

                                      Attorneys for Defendant
                                      ATLANTIC SOLUTIONS GROUP,
                                      INC.

Dated:  October 19, 2022          Respectfully submitted,


                                  By:    /s/ Andrea Fellion
                                      Brian D. Berry
                                      Andrea L. Fellion
                                      MORGAN, LEWIS & BOCKIUS LLP

                                      Attorneys for Defendant
                                      TESLA, INC.

## **ATTESTATION**

I, Damion Robinson, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.


Dated:  October 19, 2022          DIAMOND McCARTHY LLP


                                  By:  /s/ Damion Robinson
                                      Damion D. D. Robinson

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certify that I am filing the foregoing document using the Court's CM/ECF online filing system.  I am informed and believe that filing using the CM/ECF system will result in electronic notice to all interested parties who have appeared in the action.

Dated:  October 19, 2022                                      s/ Damion Robinson
                                                                            Damion Robinson